UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY M. ROBINSON, | ) | CASE NO. 5:25-cv-1518 |
| | ) | |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| PALISADES ACQUISITION XVI, LLC, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* plaintiff Kimberly Robinson ("Robinson") alleges defendant Palisades Acquisition XVI LLC ("Palisades"), John Doe Law Firm and Attorneys, and various unknown state actors, including unknown court officials, violated her rights under the Fair Debt Collection Practices Act ("FDCPA"), the Due Process Clause of the Fifth Amendment, and state law. (Doc. No. 1 (Complaint).) The claims arise in connection with Palisades' efforts to garnish Robinson's wages to satisfy a 2004 state court default judgment. (*See generally id*.)

Now before the Court are two motions: (1) Palisades' motion for judgment on the pleadings (Doc. No. 18); and (2) Robinson's motion to amend. (Doc. No. 21.) Both motions are fully briefed. For the reasons set forth below, Palisades' motion for judgment on the pleadings is GRANTED, and Robinson's motion to amend is DENIED.

## I.   BACKGROUND

### A.  State Court Case

On February 10, 2004, a civil complaint was filed against Robinson in the Akron Municipal

Court. (Doc. No. 18-1 (Declaration of Benjamim J. Kirk) ¶ 2 (citing Doc. No. 18-2 (Register of Actions Akron Mun. Ct. Case No. 04-cv-1354 (hereinafter "Akron Action")[1]), at 10[2]).) On May 3, 2004, default judgment was entered against Robinson in the Akron Action in the amount of $5,481.65, plus 10% interest (the "Akron Judgment"). (Doc. No. 18-2, at 13 (Akron Judgment); *see id*. at 10 (docket entry); Doc. No. 1 ¶¶ 2, 10.) The Akron Judgment became dormant and was revived by order of the Akron Municipal Court on February 15, 2012. (Doc. No. 18-2, at 14.)

The original plaintiff in the Akron Action was Great Seneca Financial Corp. (*See* Doc. No. 18-2 (Order), at 17.) On June 13, 2013, Palisades filed a motion for assignment of judgment, and on June 16, 2013, the Akron Municipal Court entered an order assigning the Akron Judgment to Palisades and substituting Palisades as the plaintiff in the Akron Action. (*Id*. at 9.)

Following the assignment, a magistrate of the Akron Municipal Court entered an order on October 21, 2022, reviving the Akron Judgment for a second time. (*Id*. at 19.) The revivor order states that "Defendant was properly served" with Palisades' motion for revivor and "did not file an answer." (*Id*.) The order further provides that "judgment was originally granted on 5/3/04 in the amount of $5,481.65, which included the judgment and pre-judgment interest, with an interest rate of 10% per annum and court costs." (*Id*.) Ultimately, the magistrate found that Palisades timely filed its motion to revive the judgment, and the judgment was duly revived. (*Id*.)

On December 6, 2022, garnishment proceedings were initiated on the Akron Judgment in the Akron Municipal Court. (*Id*. at 9.) The first garnishment of Robinson's wages occurred on

---

[1] As explained more fully in Section II.A. *infra*, the Court may take judicial notice of the filings on another court's docket without converting the motion for judgment on the pleadings into one for summary judgment.

[2] All page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

January 6, 2023. (*Id*. at 8 (Answer of Garnishee).)

On July 9, 2025, a hearing was held in the Akron Action at Robinson's request. (*Id*. at 21.) The hearing was "limited to the consideration of the amount of wages . . . of the Defendant [i.e., Robinson] in the hands of the garnishee [i.e., Robinson's employer], if any, that can be used to satisfy all or part of the debt owed to the Plaintiff [i.e., Palisades] and whether the funds are exempt as provided by statute[.]" (*Id*.) The magistrate found that "No error was shown" and $891.21, which had been garnished from Robinson's wages and which was in the possession of the Akron Municipal Court Clerk of Court, was to be paid to Palisades. (*Id*. (Magistrate Decision); *id*. at 20 (July 10, 2025 Judgment Entry).)

### B. Federal Case

On July 22, 2025, Robinson filed the present civil rights action in federal court. (*See* Doc. No. 1.) According to the complaint, "[t]his case arises from a 2004 judgment entered without proper service, enforcement of which resumed in 2024 without notice, in violation of due process and the" FDCPA. (*Id*. ¶ 2.) The factual allegations in the complaint are sparse and largely conclusory; in sum, they are:

> In or around May 3, 2004, a default judgment was entered against Plaintiff in Akron Municipal Court in Case No. 04CVF01354.
>
> Plaintiff was never properly served, and she had no knowledge of this judgment until 2024 when wages were garnished.
>
> The alleged debt was related to a consumer account closed by May 2004 and was time-barred under Ohio's six-year statute of limitations.
>
> Plaintiff timely filed a Motion to Vacate in state court under Rule 60(B), asserting the debt is void, unenforceable, and unlawfully revived without notice.
>
> Despite this, garnishment proceeded, causing significant financial harm to Plaintiff.

> Defendant Palisades and its agents failed to verify the debt, failed to prove Plaintiff's identity, and used a stale, invalid judgment to garnish wages.

(*Id*. ¶¶ 10–15.) Despite Robinson's allegation to the contrary, a review of the docket of the Akron Action reveals no evidence that Robinson ever filed a motion to vacate under Ohio R. Civ. P. 60(B), nor is there any docket evidence she received a ruling of vacatur from the Akron Municipal Court. (*See generally* Doc. No. 18-2, at 1–12.)

The complaint raises four claims. Count I purports to assert two violations of the FDCPA: (1) that "Defendants used false, deceptive, and unfair means to collect a debt"; and (2) that "[g]arnishment based on expired judgment without notice or verification violates the FDCPA." (Doc. No. 1 ¶¶ 16–17.) Count II alleges a violation of due process, pursuant to 42 U.S.C. § 1983. (*Id*. ¶¶ 18–19.) Counts III and IV assert state law claims for unjust enrichment and conversion and negligence, respectively. (*Id*. ¶¶ 20–22.)

Following the filing of Palisades' answer (*see* Doc. No. 6), the Court scheduled the matter for a telephonic Case Management Conference ("CMC"). (Doc. No. 9 (Scheduling Order).) Prior to the CMC, the parties filed a joint Report of Parties' Planning Meeting, pursuant to Fed. R. Civ. P. 12(f), in which the parties jointly proposed dates and deadlines for the case and further advised that Palisades was contemplating the filing of a motion for judgment on the pleadings. (*See* Doc. No. 14 (Report), at 3–4.) The telephonic CMC was held on January 6, 2026, during which the dates and deadlines that would govern the case—including the parties' jointly proposed January 30, 2026, deadline for adding parties and amending pleadings—were discussed. A briefing schedule for Palisades' motion for judgment on the pleadings was also set. (Minutes of Proceedings [non-document], 1/6/2026; Doc. No. 16 (Case Management Plan and Trial Order ("CMPTO")); *see* Doc. No. 14, at 3.)

Palisades timely moved, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings. (Doc. No. 18.) On February 18, 2026, Robinson filed a document styled "First Amended Complaint for Damages and Injunctive Relief." (Doc. No. 21.) Despite its caption, the filing asserted no claims and contained mostly legal argument and case law. (*See generally id*.) Because it was filed after the deadline for amending pleadings but within the time permitted for responding to Palisades' Rule 12(c) motion, the Court elected to liberally construe the *pro se* filing as an opposition to the dispositive motion and a motion for leave to amend. (Order [non-document], 2/19/2026.) On February 24, 2026, Robinson filed a second response to Palisades' motion for judgment on the pleadings (Doc. No. 23), and Palisades filed a combined reply in support its Rule 12(c) motion and an opposition to Robinson's request for leave to amend. (Doc. No. 26.)

## II.       MOTION FOR JUDGMENT ON THE PLEADINGS

### A.  Standard of Review

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (citation omitted). "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Id.* (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's*

*Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

"To survive a motion to dismiss [or judgment on the pleadings], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quotation marks and citations omitted) (emphasis in original). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).[3]

In ruling on a Rule 12(c) motion, the Court considers all available pleadings and may also consider: "(1) any documents attached to, incorporated by, or referred to in the pleadings; (2)

---

[3] Palisades' motion also impliedly invokes Fed. R. Civ. P. 12(b)(1) because Palisades argues, in part, that the *Rooker-Feldman* doctrine deprives this Court of jurisdiction. *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006) (A motion to dismiss based on the *Rooker-Feldman* doctrine is properly brought pursuant to Rule 12(b)(1)). (*See* Doc. No. 18, at 1, 8–10.) The Sixth Circuit has held that "[a] Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be construed as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Ky.*, 381 F.3d 511, 516 (6th Cir. 2004), *overruled on other grounds by San Remo Hotel, L.P. v. City of San Francisco*, 545 U.S. 323, 125 S. Ct. 2491, 162 L. Ed. 2d 315 (2005). Where a motion attacks the factual basis for jurisdiction, "the court is empowered to resolve factual disputes." *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).

documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted). Pertinent to the present motions, the Court finds that it may consider the proceedings in the underlying state court action because they are referred to in the complaint and integral to Robinson's claims. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) (citation omitted). Further, "[i]t is well-settled that federal courts may take judicial notice of proceedings in other courts of record." *United States v. Mont*, 723 F. App'x 325, 327 n.3 (6th Cir. 2018) (quoting *Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999) (brackets, quotation marks, and citation omitted); *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010) (citation omitted).

"A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Starlink Logistics, Inc. v. ACC, LLC*, No. 1:18-cv-29, 2019 WL 2341403, at *4 (M.D. Tenn. June 3, 2019) (quotation marks and citation omitted). The court, however, is not required to accept as true complaint allegations that are contradicted by public records, such as court dockets, and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 874–75 (W.D. Mich. 2014) (recognizing that a "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint" (quotation marks and citations omitted)); *see also Williams v.*

7

*CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (holding that "if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document" (quotation marks and citations omitted)).

Additionally, the Court recognizes that Robinson is proceeding *pro se* in this matter, and has been granted leave to proceed without paying the filing fee. (Doc. No. 3 (order granting motion for leave to proceed *in forma pauperis*).) *Pro* se complaints are to be held to "less stringent standards than formal pleadings drafted by lawyers[,]" and should therefore be liberally construed.[4] *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (similar) (citation omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (collecting cases); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading" (quotation marks and citation omitted)).

Further, because Robinson is proceeding *in forma pauperis*, her complaint is subject to a screening under 28 U.S.C. § 1915. Under § 1915(e), the Court is required to dismiss an *in forma pauperis* action if it fails to state a claim upon which relief can be granted, or if it lacks an arguable

---

[4] There is, at least, an argument to be made that Robinson's pleadings are not entitled to such deference because they may be the product of "ghostwriting." "Drafting legal documents for a *pro se* litigant is often called 'ghostwriting'— a practice the federal courts almost universally condemn." *Metron Nutraceuticals, LLC v. Cook*, 550 F. Supp. 3d 484, 486 (N.D. Ohio 2021) (citation omitted). In its expanded reply, Palisades outlines "a variety of circumstances in this case" that leads it to conclude that an undisclosed non-lawyer consultant is drafting court documents and assisting Robinson in ways that violate Fed. R. Civ. P. 11 and this Court's Local Rules. (*See* Doc. No. 26, at 17–19.) Robinson denies she has received any assistance from her consultant that violates governing civil and ethical rules. (Doc. No. 29 ("Plaintiff's Motion to Strike Defendant's Improper Allegations Regarding Third-Party Assistance"), at 2.) Based on the record to-date, the Court cannot determine whether Robinson's alleged use of an undisclosed non-lawyer consultant violated any civil or ethical rules. Moreover, given the fact that the Court is dismissing all of Robinson's claims, the Court does not believe that it would be prudent to invest additional judicial resources in developing the record further on this subject. Accordingly, the Court will liberally construe Robinson's pleadings, and her motion to strike (Doc. No. 29) is denied as moot.

basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990); *see Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

### B.  Analysis

#### 1.  Rooker-Feldman Doctrine Bars Most of Robinson's Claims

Palisades first argues that the Court lacks jurisdiction to consider Robinson's claims because of "the *Rooker-Feldman* doctrine [which] stands for the 'unremarkable proposition' that a federal district court lacks subject matter jurisdiction to review a state court decision." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 241 F. App'x 285, 287 (6th Cir. 2007) (citations omitted). (*See* Doc. No. 18, at 8–10.) The *Rooker-Feldman* doctrine is derived from two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a). *See Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923). Section 1257(a) was enacted to prevent "end-runs around state court judgments" by requiring litigants seeking review of that judgment to file a writ of certiorari with the United States Supreme Court. *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010). The *Rooker-Feldman* doctrine is based on the "negative inference" that, if appellate court review of state judgments is vested in the United States Supreme Court, then such review may not occur in the lower federal courts. *Id.*

The doctrine has a narrow application. It "does not bar federal jurisdiction 'simply because

9

a party attempts to litigate in federal court a matter previously litigated in state court.'" *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)). Rather, the doctrine applies only in cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Saudi Basic Indus. Corp*., 544 U.S. at 284. Accordingly, "[i]f the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *see Brown v. First Nat'l Mortg. Corp*., 206 F. App'x 436, 439 (6th Cir. 2006). As part of its inquiry, the court should consider plaintiff's requested relief. *Evans v. Cordray*, 424 F. App'x 537, 539 (6th Cir. 2011) ("The problem with the district court's analysis is that it determined the source of Evan's injury without reference to his request for relief.")

In the context of FDCPA claims, the *Rooker-Feldman* doctrine will not stand as a bar to federal jurisdiction where the federal action does not seek to disturb the underlying state court action, but instead seeks damages based on independent misconduct during the garnishment proceedings. In *VanderKoode v. Mary Jane M. Elliott, P.C*., for example, the Sixth Circuit found that a federal suit challenging the actions of defendants who sought state court writs of garnishments with a higher post-judgment interest than permitted under state law was not barred by the *Rooker-Feldman* doctrine. 951 F.3d 397, 403 (6th Cir. 2020). In so ruling, the court determined that the plaintiffs' injuries stemmed not from the state court judgments themselves, but

from defendants' actions in calculating and satisfying the judgment. *Id*. Similarly, in *Van Hoven v. Buckles & Buckles, P.L.C.*, a judgment debtor brought an FDCPA class action against a law firm that filed requests for writs of garnishment in a Michigan state court to collect on certain debts. 947 F.3d 889, 891 (6th Cir. 2020). There, the plaintiffs alleged that defendants unlawfully "tacked on" certain additional costs, including the costs of prior failed garnishments. *Id*. Because the plaintiffs' injuries could be traced to "the actions in tallying the amount of relief requested," rather than the underlying judgments, the court found *Rooker-Feldman* did not deprive the district court of jurisdiction.[5] *Id*. at 893.

Not only do *Vanderkoode* and *Van Hoven* provide guidance for district court's considering the application of *Rooker-Feldman* to FDCPA claims involving garnishment, they come with stern warnings. In *Van Hoven*, the Sixth Circuit echoed prior Supreme Court precedent finding that the doctrine only applies to circumstances "so narrow the Supreme Court has applied the doctrine just twice in nearly a century, making it applicable so far just to people named Rooker or Feldman." *Van Hoven*, 947 F.3d at 892 (quoting *Skinner v. Switzer*, 562 U.S. 521, 531, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011)). The court underscored that it has repeatedly "chastised lower federal courts for extending the doctrine 'far beyond' its proper scope." (*Id*. (quoting *Skinner*, 562 U.S. at 532)). Similarly, in a concurring opinion, a jurist in *VanderKoode* observed that the doctrine has impermissibly "developed into an inscrutable abstention doctrine, an untethered way for federal courts to defer to state court litigation of related cases and controversies and a new way to avoid

---

[5] The courts in *VanderKodde* and *Van Hoven* also refused to apply *Rooker-Feldman* because it is limited to state court *judgments* and writs of garnishments do "not fit that description." *Van Hoven*, 947 F.3d at 892; *VanderKodde*, 951 F.3d at 402 (*Rooker-Feldman* applies only to a collateral attack on a state court "*judgment*" and "[a] writ of garnishment is not a judgment—it is the result of a ministerial process[.]" (emphasis added)).

deciding federal questions." 951 F.3d at 406 (Sutton, J. concurring). The same jurist cautioned that, if a district court is not certain that a claim is seeking review of a state court judgment, the court should simply refrain from applying the *Rooker-Feldman* doctrine. *Id*. at 409.

With these admonitions in mind, the Court turns to the complaint. The first thing to examine is the relief sought, *see Evans*, 424 F. App'x at 539, which in Robinson's case does little to illuminate the source of the injury. The complaint seeks compensatory and punitive damages, attorney's fees, a return of all garnished funds, and declaratory and injunctive relief. (Doc. No. 1, at 3.) The prayer does not, however, provide any insight as to whether these damages were sustained during garnishment or simply because garnishment occurred on the state court judgment. The complaint allegations shed more light. Robinson explains that this action arises from "a 2004 judgment *entered without proper service*, enforcement of which resumed in 2024, without notice[.]" (Doc. No. 1 ¶ 2 (emphasis added).) She further claims that "she had no knowledge of [the Akron Judgment] until 2024, when wages were garnished." (*Id*. ¶ 11.) Because she believes the Akron Judgment was "time-barred[,]" she alleges that Palisades "used a stale, invalid judgment to garnish wages[.]" (*Id*. ¶¶ 12, 14.) She thus frames one alleged FDCPA violation as "garnishment based on an *expired judgment*[.]" (*Id*. ¶ 17 (emphasis added).)

These allegations support a finding that Robinson traces an injury back to an "invalid judgment," upon which Palisades sought to collect. Robinson reinforces that she is a "state-court loser" inviting this Court to review and reject a state court judgment by emphasizing that she filed a motion to vacate the "void" and "unenforceable" Akron Judgment, and that the garnishment proceeded despite her legal attack upon the underlying judgment. (*Id*. ¶¶ 13–14.) *See also Givens v. Homecomings Fin.*, 278 F. App'x 607, 608–09  (6th Cir. 2008) (finding FDCPA claim barred

by *Rooker-Feldman* doctrine where plaintiff was "effectively attempting to appeal from the state order granting possession [of his property] to" the creditor); *see, e.g., Pickett v. Midland Funding, LLC*, No. 1:22-cv-13071, 2023 WL 2472613, at *3 (E.D. Mich. Jan. 17, 2023) (FDCPA claim barred by *Rooker-Feldman* where plaintiff did not "claim improprieties related to the garnishments aside from the fact that they stem from what he believes is an invalid state court judgment"). It would, therefore, appear that many of Robinson's claims fall within one of the rare situations that "threads the *Rooker-Feldman* needle." *Van Hoven*, 947 F.3d at 892.

Other language in the complaint, however, points to a different conclusion. Robinson alleges that Palisades and its agents "failed to verify the debt," and "failed to prove Plaintiff's identity[.]" (Doc. No. 1 ¶ 15.) Additionally, she alleges that Palisades and the John Doe Defendants "used false, deceptive, and unfair means to collect a debt." (*Id.* ¶ 16.) These allegations appear to reference FDCPA violations relating to the garnishment process itself. *See* 15 U.S.C. §§ 1692g(b), 1692e(5), (10). But Robinson includes no factual enhancement for these largely conclusory statements. As discussed in in more detail in Section II.B.2 *infra.*, these statements are insufficient to state a cause of action under the FDCPA. Nonetheless, it appears that at least some portion of Robinson's claims may not trace their injury directly to the underlying Akron Judgment.

Robinson's allegations, taken as a whole, demonstrate that many of her claims fit within the narrow band of cases for which federal jurisdiction does not exist. As to these allegations and claims, it is evident that the source of Robinson's injury is the alleged "stale" 2004 default judgment, not the actions Palisades and their agents took in collecting on the judgment. Because the Court can only grant Robinson the relief she seeks as to these claims if this Court reviews the Akron Judgment and rejects it as time-barred, the Court finds that it is without jurisdiction to

review any claims asserting injuries stemming from the Akron Judgment. *See VanderKoode*, 951 F.3d at 408 (noting that *Rooker-Feldman* prohibits a plaintiff from asking a district court to "'declare[] null and void' a state court judgment, reminding litigants that only the Supreme Court 'could entertain a proceeding to reverse or modify [a state court] judgment.'" (Sutton, J. concurring) (quoting *Saudi Basics Indus. Corp.*, 544 U.S. at 444, 416)). To the extent that any part of Robinson's claims relate to independent conduct during garnishment, however, the *Rooker-Feldman* doctrine would not serve as a bar to federal jurisdiction. *See, e.g., Firestone v. CitiMortgage, Inc.*, No. 5:19-cv-1539, 2022 WL 3348622, at *6 (N.D. Ohio Aug. 12, 2022) (applying the doctrine to the extent that plaintiff's alleged injury was from court foreclosure rulings, but not to the extent that plaintiff alleged fraudulent conduct before and during the foreclosure proceedings where the scope of relief sought by plaintiff suggested that claims may not be "entirely foreclosed" by *Rooker-Feldman* (citing *VanderKoode*, 951 F.3d at 402)); *see also Barnes v. Capital One Fin. Corp.*, No. 1:23-cv-182, 2023 WL 6606026, at *8 (S.D. Ohio Oct. 10, 2023) (recommending dismissal for alternative basis of failure to state a claim under Rule 12(b)(6), where it was not clear whether the *Rooker-Feldman* doctrine precluded all of plaintiff's FDCPA claims (citation omitted)). Given the narrowness of the doctrine, and the vagueness of the complaint allegations, the Court is reluctant to find the entire action foreclosed by *Rooker-Feldman*.

### 2.  *FDCPA Claim is Time-Barred*

Assuming, without deciding, that some of Robinson's claims survive *Rooker-Feldman*, the Court considers other issues raised in Palisades' motion. Palisades argues that Robinson's FDCPA claim is barred by the one-year statute of limitations. (Doc. No. 18, at 10.) Because garnishment

was initiated in 2022 and Robinson's wages were garnished beginning in January 2023, Palisades maintains that the very latest Robinson would have had to file her federal action for it to be timely was January 2024. (*Id*. at 10–11.) Robinson contends that her FDCPA claim is timely because she did not immediately discover the violation until garnishment commenced and because Palisades engaged in fraudulent concealment. (Doc. No. 23, at 2.)

Claims under the FDCPA are subject to a one-year statute of limitations from the "date on which the violation occurs." 15 U.S.C. §1692k(d). The Supreme Court has instructed that the limitations period "begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered[.]" *Rotkiske v. Klemm*, 589 U.S. 8, 10, 140 S. Ct. 355, 205 L. Ed. 2d 291 (2019); *see Everly v. Everly*, 958 F.3d 442, 460 (6th Cir. 2020) (describing the expansive approach to the discovery rule in FDCPA cases as "bad wine of recent vintage" (citation omitted) (Murphy, J., concurring))). Moreover, the Sixth Circuit has refused to endorse a continuing-violation doctrine for FDCPA claims. *See Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257–58 (6th Cir. 2014) ("Application of the continuing-violation doctrine to FDCPA claims would be inconsistent with the principles underlying the Supreme Court's limited endorsement of that doctrine[.]")

As discussed above, Robinson maintains that Palisades violated the FDCPA by seeking garnishment on a stale state court judgment. Garnishment proceedings were initiated on December 6, 2022. (Doc. No. 18-2, at 9.) Section 1692k(d) therefore dictates that the statute of limitations began to run, at the latest, on December 6, 2022. Robinson would have had to bring this action by no later than December 6, 2023, for her FDCPA claim to be timely. But she did not file her action until July 22, 2025—approximately 18 months beyond the limitations period. Neither the fact that

she did not immediately discover the garnishment, nor that the garnishment continued until after she filed the present federal action, saves her claim. *See Rotkiske*, 589 U.S. at 10; *Everly*, 958 F.3d at 460; *Slorp*, 587 F. App'x at 257–58. Even if the Court takes the more recent date Robinson alleges she first learned of the alleged violation—January 6, 2023, the date of the first garnishment (Doc. No. 18-2 at 8)—the FDCPA claim is still untimely.

Yet, Robinson insists that any untimeliness may be excused by equitable tolling because of fraudulent concealment. (Doc. No. 23, at 2.) "The doctrine of fraudulent concealment allows equitable tolling of the statute of limitations where 1) the defendant concealed the underlying conduct, 2) the plaintiff was prevented from discovering the cause of action by that concealment, and 3) the plaintiff exercised due diligence to discover the cause of action." *Huntsman v. Perry Local Sch. Bd. of Educ.*, 379 F. App'x 456, 461 (6th Cir. 2010) (citing *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465 (6th Cir. 1988)). Claims of fraudulent concealment must be pled with specificity. Fed. R. Civ. P. 9(b) (providing that "a party must state with particularity the circumstances constituting" the alleged fraud). Moreover, equitable tolling based on fraudulent concealment is narrowly applied since statutes of limitation are favored in the law. *See Hill v. Dep't of Labor*, 65 F.3d 1331, 1336 (6th Cir. 1995) (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) (further citation omitted)).

In one of her opposition briefs, Robinson claims that she was "unaware of the wrongful garnishment[,]" she "[d]id not know the debt was invalid or satisfied[,]" and she "[d]iscovered misconduct only after investigation[.]" (Doc. No. 23, at 2.) Further, she vaguely alleges that she was "never properly served[.]" (Doc. No. 1 ¶ 11.) Robinson also alleges, in conclusory fashion, that "Defendants used false, deceptive, and unfair means to collect a debt." (*Id*. ¶ 16.) These

16

allegations lack the specificity necessary to establish fraudulent concealment. In particular, she fails to identify *any* fraudulent actions taken by Palisades (beyond her vague reference to "misconduct" and failed service) that prevented her from discovering the alleged FDCPA claim. This falls well short of establishing an entitlement to equitable tolling. *See Davis v. Smith's Transfer, Inc.*, 841 F.2d 139, 141 (6th Cir. 1989) ("Given the absence of any fraudulent concealment on the part of the defendants, plaintiff's argument for equitable tolling on the basis of fraudulent concealment is meritless."); *see, e.g., Univ. of Pittsburgh v. Townsend*, No. 3:04-cv-291, 2007 WL 2263079, at *17 (E.D. Tenn. Aug. 3, 2007) ("Having failed to identify any affirmative, independent acts of concealment, the University's argument that the doctrine of fraudulent concealment tolls the statutes of limitations must fail."); *see also Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 395 (6th Cir. 2015) (fraudulent concealment requires "affirmative act or misrepresentation by the defendant . . . mere silence on the part of the defendant is not enough" (citation omitted)); *Barnes v. SRI Surgical Express, Inc.*, No. 1:09-cv-204, 2010 WL 11639654, at *8 (E.D. Tenn. Dec. 13, 2010) ("Barnes cannot prevail on this issue and obtain equitable tolling of the one-year statute of limitation merely by making vague allegations of fraudulent concealment without supporting proof.")

At best, these arguments merely echo Robinson's complaint allegation that she did not learn of the Akron Judgment until garnishment commenced (Doc. No. 1 ¶ 11). And, as noted, the limitation period runs from the date of the violation and not from the date of its discovery. In any event (as previously observed), Robinson learned of the garnishment more than one year before she filed suit. For all of these reasons, the Court finds the FDCPA claim time-barred.

17

### 3. *Federal Claims Fail Under Fed. R. Civ. P. 12(c)*

#### a.  FDCPA

Palisades also argues that Robinson's FDCPA claim fails to state a cause of action under Fed. R. Civ. P. 12(c). (Doc. No. 18, at 7–8.) To set forth a claim under the FDCPA, a plaintiff must allege facts that, if believed, would show: "(1) that he is a 'consumer' as defined in 15 U.S.C. § 1692a(3); (2) that the 'debt' arises out of a transaction which is 'primarily for personal, family or household purposes'; (3) defendant is a 'debt collector' as defined in the FDCPA; and (4) defendant has violated one of the prohibitions in the FDCPA." *Estep v. Manley Deas Kochalski*, LLC, 942 F. Supp. 2d 758, 766 (S.D. Ohio 2013) (citations omitted); *see Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1100 (6th Cir. 2015) (identifying these elements (citations omitted)). "The absence of any factor is fatal to a claim under the FDCPA." *Barnes*, 2023 WL 6606026, at *4 (citing *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009)).

As to the second factor, "[c]ourts in th[e Sixth] Circuit have held that a plaintiff must 'allege specific facts demonstrating that a debt was incurred for personal purposes' to adequately state a claim under the FDCPA." *Crenshaw v. Portfolio Recovery Assoc., LLC*, No. 1:23-cv-474, 2023 WL 6958635, at *4 (N.D. Ohio Oct. 20, 2023) (citations omitted); *see Barnes*, 2023 WL 6606026, at *5 (collecting cases). According to the complaint, the debt in question was related to a "consumer account closed by May 2004[.]" (Doc. No. 1 ¶ 12.) There are, however, no factual allegations from which a trier of fact could find that this debt arose out of a transaction which is primarily for personal, family or household purposes. Without such factual enhancement, a conclusory allegation that the debt involves a "consumer account" is insufficient to state a claim under the FDCPA. *See Crenshaw*, 2023 WL 6958635, at *4 (allegation that the debt related to a

18

"credit card contract" was insufficient to establish that the debt was a qualifying debt under the FDCPA); *Barnes*, 2023 WL 6606026, at *5 (bare conclusory allegation that a debt is a "consumer debt" was insufficient to satisfy the FDCPA (collecting cases)).

The complaint allegations also clearly fall short of establishing the fourth element of an FDCPA claim: a violation of the FDCPA. Under the FDCPA, a creditor must provide validation of a debt upon a consumer's request. Specially, 15 U.S.C. § 1692g(b) states in relevant part:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector.

*Id*. "The verification requirement prevents 'debt collectors from dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Sherman v. Portfolio Recovery Assocs., LLC*, No. 1:21-cv-570, 2022 WL 952540, at *7 (S.D. Ohio Mar. 30, 2022) (quoting *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 782 (6th Cir. 2014)) (further citation omitted).

With respect to § 1692g, Robinson alleges that Palisades "failed to verify the debt [and] failed to prove Plaintiff's identity[.]" (Doc. No. 1 ¶ 15.) But once again, Robinson does not plead any factual enhancement for her conclusory statements. Specifically, she fails to allege that she made a timely notice that she was disputing the debt, and she also neglects to plead facts that would establish either that Palisades did not adequately respond to Robinson's timely dispute or continued collection activities in the absence of a valid response. She has, therefore, failed to state a claim under § 1692g. *See Rivera v. New Penn Fin., LLC*, 713 F. App'x 683, 684 (9th Cir. 2018) ("The district court properly dismissed [plaintiff's] FDCPA claim under § 1692g because

19

[plaintiff] failed to allege facts sufficient to show that she made a timely debt validation request or that defendant's response failed to comply with the requirements of § 1692g."); *Savage v. Hatcher*, 109 F. App'x 759, 762 (6th Cir. 2004) (A complaint that fails to allege facts demonstrating that the debt collector continued collection activities despite failing to provide verification of the debt as requested does not state a claim for a violation of § 1692g.)

The complaint also appears to invoke 15 U.S.C. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Robinson's complaint alleges "[d]efendants used false, deceptive, and unfair means to collect a debt." (Doc. No. 1 ¶ 16.) Yet, the complaint fails to identify *any* false representations or deceptive actions taken by defendants. Robinson's conclusory claim that Palisades engaged in "false, deceptive, and unfair means" is insufficient to set forth a violation of the FDCPA. *See, e.g., Brody v. Genpact Servs., LLC*, 980 F. Supp. 2d 817, 821 (E.D. Mich. 2013) (bare allegation that defendant used "false representation[s] or deceptive means" to collect the asserted debt, failed to state a claim under the FDCPA (citing *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79)).

To the extent that Robinson maintains that the "deceptive practices" refers to Palisades' pursuit of what she believes to be a time-barred debt, the complaint fails to state a claim. Section 1692e(5) prohibits a debt collector from threatening to "take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). The Sixth Circuit has never squarely spoken on the question of whether the FDCPA prohibits filing a lawsuit to collect on a time-barred debt; nonetheless, courts within and outside the Sixth Circuit have held that § 1692e(5) prohibits such conduct. *See Thompson v. Midland Funding, LLC*, 375 F. Supp. 3d 774, 780–82 (E.D. Ky.

20

2019) ("By filing a time-barred lawsuit, Midland threatened to pursue the time-barred debt via litigation, which it was not lawfully permitted to do under the FDCPA." (collecting cases)); *see also Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 332 (6th Cir. 2006) (noting that the Sixth Circuit has never addressed this issue and expressing no opinion on the question). Assuming, without deciding, that pursuing a time-barred debt via litigation violates the FDCPA, the record from the state court is clear that the state court determined, on October 21, 2022, that the Akron Judgment was duly revived, after Robinson was properly served with Palisades' timely motion for revivor. (Doc. No. 18-2, at 19.)

Under Ohio law, a judgment becomes dormant after five years in the absence of any steps to obtain execution upon it. Ohio Rev. Code § 2329.07(B). According to Ohio Rev. Code § 2325.15, a dormant judgment may be revived in the manner prescribed by Ohio law. Because the state court ruled that Robinson was properly served and the Akron Judgment was properly revived, the doctrine of *res judicata* bars Robinson from arguing or relitigating those issues herein. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982) (*res judicata* prevents parties from relitigating a claim that has already been decided in a final, appealable order (collecting cases)); *see also Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (identifying the elements of *res judicata* (citation omitted));[6] *Columbus Div. of Income Tax v. Yokey*, No. 19AP-559, 2020 WL 3121044, at *1 (Ohio Ct. App. June 11, 2020) (appeal from "final order reviving dormant judgment").

---

[6] Specifically, the elements of *res judicata* are, "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Id.* Here, each element is clearly met.

21

Because the complaint fails to allege facts sufficient to establish the second and fourth elements of an FDCPA claim, Count I must also be dismissed for failure to state a claim.[7]

### b.   42 U.S.C. § 1983

Palisades did not specifically seek dismissal of Robinson's federal civil rights claim for failure to state a cause of action.[8] The Court, therefore, screens this claim under 28 U.S.C. § 1915(e). To plead a cause of action of action under 42 U.S.C. § 1983, a plaintiff must plead two elements: "(1) [a] deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted). Robinson's complaint fails to allege facts that, taken as true, would establish either element of a federal claim under § 1983.

Beginning with the second element, Robinson alleges merely that "Defendants acted under color of law[.]" (Doc. No. 1 ¶ 18.) But liability under § 1983 usually exists only if the defendant is a state or local government agent. *Inner City Contracting, LLC v. Charter Twp. of Northville*, 87 F.4th 743, 757 (6th Cir. 2023). A private party can only be held liable if the private party's actions "so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (collecting cases). Robinson has failed to allege any facts that would suggest that Palisades, a private company, or its unidentified agents, private citizens, engaged in conduct that could be construed as state action. *See Brown v. Ocwen Loan Serv.*, No. 14-cv-2925, 2015 WL 1529162, at *3 (W.D. Tenn. Apr. 2, 2015) (finding § 1983 action

---

[7] Because the FDCPA claim is time-barred, and because it fails to state a claim, it is also dismissed against the "John Doe Law Firm & Attorneys." (*See* Doc. No. 1, at 2 (indicating that Count I is brought "Against Palisades and John Doe Attorneys[.]").)

[8] It is unclear whether Robinson brings her § 1983 action against Palisades, as the complaint merely provides that it is brought "Against State Actors and *Possibly* Palisades[.]" (Doc. No. 1 at 3 (emphasis added).)

against private company failed to state a claim (citing *Tuhfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) ("A plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." (further citation omitted)))).

As to the first element, the complaint also fails to sufficiently plead a deprivation of a constitutional violation. Robinson alleges that defendants violated her due process rights, claiming that she was "not served, and no hearing was afforded prior to garnishment." (Doc. No. 1 ¶¶ 18–19.) To the extent that due process requires a judgment creditor to give notice to the judgment debtor and requires the issuing court an opportunity to contest the garnishment, the record is clear that Robinson received such process. As noted, on July 9, 2025, the state court held a hearing, at Robinson's request, on the garnishment of the Akron Judgment. (*See* Doc. No. 18-2, at 20–21.) The state court docket clearly refutes Robinson's allegation that she did not receive a hearing, and the Court, therefore, need not treat as true her allegation to the contrary. *See Moody*, 32 F. Supp. 3d at 874–75. Because the properly pleaded complaint allegations do not support a constitutional violation of due process, Robinson's § 1983 claim against Palisades must be dismissed for this additional reason.[9]

---

[9] Because Robinson fails to plead a constitutional violation, the claim must also be dismissed against the "Unknown State Actors, Including Court Officials[.]" (Doc. No. 1, at 1; *see also id*. at 3.)

### III.    MOTION TO AMEND

#### A.  Standard of Review

Rule 15(a)(2) governs motions to amend pleadings at the pre–trial stage, and provides that the court should "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Nevertheless, denying leave is appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Under Rule 15(a)(2) "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (quotation marks and citation omitted).

Where "the deadline for amending pleadings established by the Court's scheduling order has passed, the Sixth Circuit has made clear that, 'a plaintiff must first show good cause under Rule 16(b) for failure earlier to seek leave to amend' and the Court 'must evaluate prejudice to the nonmoving party before [it] will consider whether amendment is proper under Rule 15(a).'" *Bare v. Fed. Express Corp.*, 886 F. Supp. 2d 600, 605 (N.D. Ohio 2012) (quoting *Com. Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009) (further quotation marks and citation omitted)); *see Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 449 (6th Cir. 2010) (recognizing that the Sixth Circuit applies a different standard when reviewing a decision on a motion to amend after the date set forth in the Rule 16 scheduling order (citing *Leary v. Daeschner*, 349 F.3d 888, 905–09 (6th Cir. 2003)). Because Robinson filed her motion to amend after the

24

Court's January 30, 2026, deadline for amending the pleadings, application of Rule's 16's more stringent "good cause" standard would be appropriate.[10]

## B. Discussion

The basis for Robinson's motion to amend is her belief that she has come across "newly obtained evidence[.]" (Doc. No. 21, at 1.) In particular, she claims that the Akron Municipal Court recently issued a "formal release of wage garnishment[,]" ordered "all garnished funds be returned to" Robinson, and Palisades "refunded only a portion of the funds taken, despite a clear judicial directive to return all monies." (*Id.*) Robinson misunderstands the nature of the recent proceedings in the Akron Municipal Court; no such "judicial directive" was ever issued in the Akron Action. Accordingly, even if the Court applies Rule 15(a)'s more liberal standard, the motion to amend must be denied as futile.

The filings in the Akron Action plainly show that, on January 7, 2026, *Palisades' attorneys* submitted a request to the Akron Municipal Court to voluntarily terminate the garnishment of Robinson's wages while the instant federal litigation is pending, and return garnished funds to Robinson. (Doc. No. 27-1 (Request), at 10; *see also* Doc. No. 22 (Palisades' Status Report, 2/20/2026), at 2 ("Palisades maintains a valid judgment against [Robinson] in Akron County, OH. Notwithstanding, due to the pendency of this lawsuit, Palisades voluntarily refunded to [Robinson]

---

[10] "In order to demonstrate good cause, the plaintiff must show that the original deadline could not reasonably have been met despite due diligence and that the opposing party will not suffer prejudice by virtue of the amendment." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014) (citing *Leary*, 349 F.3d at 906). "A plaintiff does not establish 'good cause' to modify a case schedule to extend the deadline to amend the pleadings where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the complaint before the deadline." *Id.* (citing *Leary*, 349 F.3d at 908) (observing that the plaintiffs did not demonstrate good cause for their delay in seeking monetary damages, but were "obviously aware of the basis of the claim for many months" (further citations omitted))). However, to deny a motion to amend, the Court must also find "'at least some significant showing of prejudice to the opponent[.]'" *Leary*, 349 F.3d at 907 (quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (further quotation marks and citation omitted).

an amount received from a previous garnishment per [Robinson's] request.") Because Robinson's employer had already initiated another payment to the state court (*see* Doc. No. 27-1 (Register of Actions), at 3), Palisades submitted another request for a voluntary release on January 13, 2026, to clarify that the latest garnishment should also be returned to Robinson. (Doc. No. 27-1, at 11.) On January 20, 2026, Robinson's employer submitted the statutorily required Final Report and Answer of Garnishee. (Doc. No. 27-1 (Final Report), at 12–13.)

The Final Report states that the reason for the termination of garnishment prior to full satisfaction of the Akron Judgment was that "[t]he judgment creditor [(Palisades)] or the judgment creditor's attorney has issued a request that the order of garnishment be terminated and the garnishee released from the mandates of the order of garnishment." (*Id.* at 13.) Contrary to Robinson's assertions, the Akron Judgment was never declared invalid, and the Akron Municipal Court never ordered Palisades to cease garnishment. Palisades' voluntary decision to suspend garnishment until the present litigation is resolved does not violate any federal or state laws. Because Robinson's "newly obtained evidence" does not rescue Robinson's existing federal claims from dismissal, or otherwise plead new claims for which she is entitled to relief, the motion to amend is denied as futile. *See Jenkins v. Foot Locker Inc.*, 598 F. App'x 346, 350 (6th Cir. 2015) (holding that a motion to amend a complaint should be denied as futile where the complaint as amended would not survive a motion to dismiss (citation omitted)); *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 574 (6th Cir. 2010) (similar).

## IV.    SUPPLEMENTAL JURISDICTION

With the dismissal of Robinson's federal claims, and the denial of Robinson's motion to amend, the Court must determine whether to exercise jurisdiction over the state law claims. A district court "may decline to exercise supplemental jurisdiction over" a state claim if the court "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The decision whether to exercise supplemental jurisdiction requires considerations of "judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), *superseded by statute on other grounds as stated in Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 39–41, 145 S. Ct. 41, 220 L. Ed. 2d 289 (2025). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims[.]" *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) (citation omitted); *see Martinez v. City of Cleveland*, 700 F. App'x 521, 523 (6th Cir. 2017) (recognizing that, under § 1367(c)(3), there is a "strong presumption in favor of declining to exercise jurisdiction over supplemental state-law claims after dismissing federal anchor claims" (citations omitted)); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2007) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." (citations omitted)). Having dismissed the federal claims early in the litigation—before substantial discovery has taken place and before a summary judgment motion has been filed—the Court declines to exercise supplemental jurisdiction over Robinson's state law claims.

27

## V.    CONCLUSION

As explained more fully above, Palisades' motion for judgment on the pleadings (Doc. No. 18) is GRANTED, and Robinson's motion to amend (Doc. No. 21) is DENIED. Robinson's FDCPA claim (Count I) is DISMISSED pursuant to Rule 12(c) and Rule 12(b)(1). Robinson's claim under 42 U.S.C. § 1983 (Count II) is DISMISSED pursuant to 28 U.S.C. § 1915(e), and the Court CERTIFIES that an appeal from this decision could not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3). Robinson's state law claims are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3). This case is closed.

**IT IS SO ORDERED**.

Dated: May 26, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**